Mr. Shawnee Cal Dye
SID No: 8415580
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR  97914-8335

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SHAWNEE CAL DYE,**<br><br>Plaintiff,<br><br>v.<br><br>**OREGON DEPARTMENT OF CORRECTIONS, DR. GARTH GULICK** (in his individual and official capacities),<br><br>Defendants. | Case No.  2:19-cv-00559-MK<br><br>**COMPLAINT**<br><br>Civil Rights Action Under 42 U.S.C § 1983 With Supplemental State Claims<br><br>Filing Fee: $400.00<br>Per Schedule of Fees Revised September 2, 2018 as Authorized Under 28 U.S.C. § 1926 |

*Introduction*

This is a civil rights action filed by Mr. Shawnee Cal Dye, a state prisoner, for damages and injunctive relief under 42 U.S.C. § 1983, alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution. The plaintiff also alleges the torts of malpractice and negligence.

*Jurisdiction*

1. This Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(1) and 1343.

2. The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367.

*Parties*

3. The plaintiff, Mr. Shawnee Cal Dye, was at all relevant times a prisoner in the custody of the Oregon Department of Corrections ("ODOC") during the events described in this complaint.

COMPLAINT

Page 1 of 7

4. Defendant ODOC is an agency of the State of Oregon.

5. Defendant Dr. Garth Gulick ("GULICK") is a physician employed by ODOC to provide medical treatment to inmates in the custody of ODOC at Stake River Correctional Institution ("SRCI") in Ontario, Oregon. Plaintiff was assigned to GULICK's caseload and was responsible for providing medical treatment to plaintiff.

6. Defendant Ms. Colette Peters was at all relevant times the Director of ODOC.

*Facts*

7. In 2006 after worsening lower back pain, plaintiff's primary care provider ("PCP"), Dr. Rafalski in Albany, Oregon ordered an MRI of plaintiff's spine. The MRI showed both disc herniation and spinal stenosis at L4-L5. Plaintiff subsequently had a laminectomy.

8. In 2008 plaintiff's stenosis was found to have not improved so he had a second laminectomy.

9. In 2012 plaintiff's back pain worsened so he saw a different neurosurgeon who was employed by Oregon Health Sciences University ("OHSU") and who recommended a fusion of the L4-L5 vertebrae with four titanium pins inserted to help keep the vertebrae stable.

10. In June of 2015 plaintiff moved to Spokane, Washington. Plaintiff's PCP, Dr. Zugec, observed plaintiff unable to walk in a straight line and as a result sent plaintiff to the emergency room to obtain an immediate MRI. Plaintiff was admitted into the hospital after the MRI was completed, and the following day had emergency surgery on his neck to repair two partially severed vertebrae.

11. In October 2015, plaintiff fell down a flight of stairs. In order to determine the extent of plaintiff's injuries Dr. Zugec, ordered another MRI of plaintiff's spine.

12. On November 7, 2015, before the appointment for the MRI, plaintiff was arrested and was incarcerated pre-trial in the Linn County Jail which is located in Albany, Oregon.

13. On or about January 22, 2016, pursuant to a plea agreement, plaintiff was transferred into the custody of the ODOC to serve a prison term and was initially lodged at Coffee Creek Correctional Facility ("CCCF") which is located in Wilsonville, Oregon.

14. Plaintiff was told by CCCF medical staff that his medical issues would be addressed at his next institution.

15. On or about February 18, 2016 plaintiff was transferred to SRCI.

16. After being transferred to SRCI plaintiff was assigned to GULICK's caseload.

COMPLAINT

17. In March, 2016 plaintiff had his first appointment with GULICK. At this appointment plaintiff detailed his medical history and current symptoms of neck and back pain. GULICK told plaintiff that plaintiff could not have an MRI due to too much metal in plaintiff's neck and back. GULICK told plaintiff that a myelogram was an option but that plaintiff's symptoms did not warrant that procedure. GULICK further told plaintiff that if plaintiff did have a myelogram and the myelogram test result was negative or inclusive that higher ups would be upset with plaintiff.

18. On or about March 22, 2016 plaintiff had a subsequent appointment with GULICK during which GULICK ordered an x-ray of plaintiff's spine.

19. In the follow up appointment to review the results of the x-ray GULICK told plaintiff that although the x-ray showed some pins in plaintiff's vertebrae had sheared off, the sheared pins would not cause pain and that although plaintiff had minor arthritis, plaintiff should not be experiencing any pain and GULICK saw no reason to order a myelogram.

20. Between April 18, 2016 and June 15, 2016 plaintiff sent over ten kytes to Health Services ("HS") at SRCI pleading for diagnosis of the underlying cause and treatment for plaintiff's severe back and neck pain. HS took no action to relieve plaintiff's pain nor did HS order a myelogram or any other diagnostic tests to determine the underlying cause(s) of plaintiff's pain.

21. On March 9, 2016, plaintiff sent a kyte to Aimee Hughes, Director of Nursing, in which plaintiff requested a different doctor. Plaintiff explained that GULICK refused to recognize the legitimacy of plaintiff's pain, refused to treat plaintiff's pain, and refused to order diagnostic tests to determine the cause of plaintiff's pain. In addition, plaintiff explained that GULICK had taken active steps to block plaintiff's access to any pain relief by stopping plaintiffs prescription for Gabapentin more than once.

22. On or about June 6, 2016, plaintiff filed a grievance against GULICK. In this grievance plaintiff alleged indifference and neglect by GULICK in GULICK's medical treatment of plaintiff. Plaintiff asked for another provider. The grievance was denied three times and appealed three times.

23. On or about May 24, 2017, plaintiff filed another grievance against GULICK again for indifference and neglect of plaintiff. At a previous appointment with GULICK, plaintiff asked for help with pain and was called a fraud and a liar. Plaintiff asked for a new provider. The grievance was denied three times and appealed three times.

24. Over the next two years, plaintiff continued to kyte (around 40 kytes) asking HS for help with pain, for an MRI or a myelogram. All of plaintiff's requests were denied by HS.

25. In January, 2018, plaintiff wrote a letter to PETERS concerning plaintiff's lack of medical

care. PETERS responded on January 31, 2018. PETERS response stated that plaintiff's letter was forwarded to Mr. Joe Bugher, identified as Administrator of Health Services to review/address plaintiff's "requests."

26. On or about March, 2018, GULICK ordered plaintiff undergo a myelogram. The procedure confirmed that plaintiff's double fusion surgery done on his neck in June, 2015 had never healed properly and that there were still compressed vertebrae in plaintiffs neck. Plaintiff was then scheduled to see a nerve specialist located in Boise, Idaho for a nerve conduction test. The nerve specialist told the plaintiff and the two corrections officers present that the plaintiff should be in surgery ASAP, and that he could do nothing for plaintiff other than confirm that the numbness and tingling in plaintiffs arms and feet was caused by the compressed vertebrae in plaintiffs neck.

27. On or around June 21, 2018, plaintiff underwent a double fusion in his neck by Dr. Little. Dr. Little explained to plaintiff that due to over two years of non-treatment of plaintiff's injuries his nerve damage was irreversible. Dr. Little then informed plaintiff that he was ordering an MRI for the plaintiff's back. Plaintiff informed Dr. Little that GULICK had stated that plaintiff could not have an MRI due to the existing metal in plaintiff's back. Dr. Little told plaintiff that GULICK was incorrect and that the metal in plaintiff's back did not preclude him from having an MRI. Plaintiff asked Dr. Little about pain management options and was informed by Dr. Little that he only covers post-surgical pain management but that he would recommend to GULICK that plaintiff be seen by a pain management specialist.

28. On or about July 5, 2018, after returning to SRCI and staying in the infirmary for a few days, plaintiff was assigned the housing "3G01B." While on the way to evening med line, plaintiff's back pain was so severe that the officer for med line asked plaintiff if she needed to call medical. The following day the plaintiff was readmitted to the infirmary for another week due to severe back pain. GULICK again refused to provide treatment for plaintiffs chronic back pain.

29. On August 4, 2016 plaintiff sent a sixth and final kyte to Ms. Hughes. She informed plaintiff that plaintiff was being accused by GULICK of faking pain and extortion.

30. On or about August 27, 2018, plaintiff filed the third grievance against GULICK for indifference and neglect. During a previous appointment, plaintiff was again called a fraud and a pill addict when asking GULICK for help with pain. Plaintiff asked for a new provider and was denied. The grievance was fully exhausted and in all cases denied by ODOC staff.

31. On or about September 2018, plaintiff underwent an MRI for back pain. At a follow up appointment with Dr. Little, the doctor informed plaintiff that the MRI showed that the double fusion done at OHSU in 2012 had failed and that multiple pins had sheared off causing movement and damage in the lower back. The MRI also showed spinal stenosis in the lower back. Dr. Little then informed the plaintiff that he would be scheduled for another

COMPLAINT

back surgery (a laminectomy and a fusion). Dr. Little also explained that because of the extensive damage done to plaintiff's lower back, and due to the sheared pins, the surgery would take eleven hours, rather than the normal 3 to 4 hours. Dr. Little also explained to plaintiff that the recovery time would be around three times longer than normal due to the damage already done.

32. On February 19, 2019 plaintiff had surgery on his back, a laminectomy and double vertebrae fusion. The surgery was performed at St. Luke's Hospital in Boise, Idaho.

33. On February 24, 2019 plaintiff was discharged from the hospital and returned to SRCI.

34. On February 28, 2019 GULICK without a discussion or evaluation of plaintiff cut plaintiff's prescribed pain medication in half (from 20Mg oxycodone QID to 10Mg oxycodone QID).

35. On March 4, 2019 plaintiff had an appointment with GULICK. During the appointment GULICK restored plaintiff's pain medication to the level it was before it was cut in half on February 28, 2019.

36. On March 8, 2019 plaintiff had a follow up appointment with Dr. Little who ordered that plaintiff's pain medication regimen remain unchanged for at least thirty days.

37. On March 11, 2019 GULICK again without discussion with or evaluation of plaintiff, and contrary to Dr. Little's orders, began titrating downward plaintiff's prescribed pain medication (15Mg oxycodone QID).

38. On March 18, 2018 GULICK further reduced plaintiff's prescribed pain medication to 10Mg oxycodone QID.

39. On March 20, 2019 GULICK restored plaintiff's pain medication to 20Mg of oxycodone QID.

*Exhaustion of Administrative Remedies*

40. The plaintiff has exhausted his administrative remedies with respect to all claims and all defendants.

41. On April 2, 2019 plaintiff filed a Tort Claim Notice as required by Oregon law.

*Claims for Relief*

**First Claim for Relief – Violation of Plaintiff's Eighth Amendment Right to be Free From Cruel and Unusual Punishment
Against Defendants Garth Gulick and ODOC**

COMPLAINT

42. Plaintiff realleges and reincorporates by reference paragraphs 7 through 37.

43. GULICK's repeated decisions to treat plaintiff as a malingerer, to not order appropriate and necessary medical tests, and to under-treat plaintiff's severe pain fell below the then prevailing duty of care, skill, and diligence used by ordinarily careful physicians in the same or similar circumstances in the plaintiff and defendant GULICK's community.

### Second Claim for Relief – Medical Malpractice
### Against Defendant Garth Gulick

44. Plaintiff realleges and reincorporates by reference paragraphs 7 through 37.

45. GULICK's repeated decisions to treat plaintiff as a malingerer, to not order appropriate and necessary medical tests, and to under-treat plaintiff's severe pain fell below the then prevailing duty of care, skill, and diligence used by ordinarily careful physicians in the same or similar circumstances in the plaintiff and defendant GULICK's community.

### Third Claim for Relief – Negligence
### Against Defendant ODOC

46. Plaintiff realleges and reincorporates by reference paragraphs 7 through 37.

47. ODOC, by way of plaintiff's grievances, knew or should have known that GULICK was subjecting plaintiff to care than fell below the community standard for care and caused the plaintiff to unnecessarily suffer.

48. ODOC, by way of complaints from both inmates and staff, knew or should have known that GULICK was regularly providing inmates with care that fell below the community standard and caused those inmate to unnecessarily suffer.

*Relief Requested*

**WHEREFORE**, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:
   1. Plaintiff's right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment was violated by the actions and omissions of defendants ODOC and GULICK.
B. Issue an injunction ordering defendant ODOC, or their agents to:
   1. Carry out without delay the treatment recommendations of Dr. Little;
   2. Immediately arrange for plaintiff's need for physical therapy or other follow-up medical treatment to be evaluated by a medical practitioner with expertise in the treatment and restoration and function of severe spinal cord injury; and,

COMPLAINT

      3. Assign plaintiff to a doctor other than GULICK.
C. Award nominal damages in the following amounts:
      1. $1.00 jointly and severally against defendants GULICK and ODOC.
D. Award punitive damages in the following amounts:
      1. $3,500,000.00 jointly and severally against defendants GULICK and ODOC.
E. Grant such other relief as it may appear that plaintiff is entitled.

Dated this 15th day of April, 2019.

Respectfully submitted,

*/s/ Shawnee Cal Dye*

Mr. Shawnee Cal Dye
SID No: 8415580
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR  97914-8335

COMPLAINT